UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PACCAR FINANCIAL CORP., *a corporation*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 2:17-cv-00110-AMM ) |
| LENN MORRIS and RICKY FREEMAN, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

This case is before the court on Plaintiff PACCAR Financial Corporation's ("PACCAR") Motion to Renew Motion for Default Judgment Against Defendant Ricky Freeman, Doc. 47, which incorporated PACCAR's Renewed Motion for Default Judgment Against Defendant Ricky Freeman, Doc. 26. PACCAR filed this action against Lenn Morris and Ricky Freeman to collect indebtedness owed under commercial guarantee agreements. Doc. 1. For the reasons explained below, PACCAR's motion is **GRANTED** and a default judgment against Ricky Freeman is **ENTERED**.

**I.   BACKGROUND**

**A. Factual Allegations**

PACCAR financed the purchase of twelve tractors and trailers (the "Tractors and Trailers") by Forest Energies, LLC from Kenworth of Birmingham, Inc. pursuant to six Security Agreement Retail Installment Contracts (the "Contracts"). Doc. 1 ¶ 6. The Contracts were assigned to PACCAR and required Forest Energies, LLC "to pay monthly installments to PACCAR, and further provide for the payment of interest, late charges, costs of collection and attorneys' fees." *Id.* ¶¶ 6, 20.

Mr. Freeman and Mr. Morris "jointly and severally, guaranteed all obligations" of Forest Energies, LLC under the Contracts. *Id.* ¶ 7. For each Contract, Mr. Freeman executed a Security Agreement Guaranty, which provides, in part, that Mr. Freeman "hereby unconditionally guarantees to Seller and its assigns, regardless of the enforceability of the Contract, or any other circumstances which might affect the liability of Guarantor that (i) all Buyer's indebtedness under the Contract ('Debt'), including without limitation, each installment thereof will be paid in full when due, whether at stated maturity or maturity by acceleration or otherwise, in accordance with the terms of the Contract." *Id.* ¶ 22.

Forest Energies, LLC defaulted on the contracts and filed for bankruptcy. *Id.* ¶ 21. "The amount due and owing under the Contracts as of the date of the bankruptcy filing was $1,501,245.75, which sum does not include attorney's fees which are provided for in the Contracts." *Id*. Accordingly, in its Complaint, PACCAR requested reimbursement "in the amount due as of November 18, 2016 of

$1,501,245.75, together with accrued and accruing interest, late charges, expenses of collection, including attorneys' fees and costs, as well as such other, further, or different relief to which PACCAR may be entitled." *Id*. ¶¶ 24-26.

After filing the Complaint, PACCAR "subsequently sold all collateral vehicles securing the indebtedness owed . . . , which has reduced the amounts sought." Doc. 26 at 2 and ¶¶ 1-46. The Contracts contemplate a foreclosure sale of the Tractors and Trailers upon default. Doc. 26-1 at 2-63 ¶ 11(e) ("Buyer agrees that it is liable for and will promptly pay any deficiency resulting from any disposition of the Collateral after default.").

PACCAR now seeks the remaining amount owed, which is $700,684.95. Doc. 26 at 16; Doc. 47 at 3. Although, PACCAR asserts that attorneys' fees and costs are permitted by the Contracts and Security Agreement Guaranty, PACCAR "does not seek attorneys' fees or costs of collection . . . to avoid the necessity of any evidentiary hearing." Doc. 26 n.1.

### B. Procedural History

On January 20, 2017, PACCAR filed its Complaint against the Defendants, alleging one count: Count One – Personal Guaranties. Doc. 1. On January 26, 2017, a process server served Mr. Freeman at 100 Edgil Road, Jasper, Alabama. Docs. 6, 8. Mr. Freeman did not answer or file a responsive pleading to the Complaint, nor did he or an attorney for him ever appear in the case.

On February 17, 2017, the day after Mr. Freeman's answer was due, PACCAR filed an Application for Entry of Default Against Defendant Ricky Freeman and an Affidavit in Support. Docs. 10 and 11. On March 6, 2017, the Clerk of Court entered a default as to Mr. Freeman. Doc. 12. On March 14, 2017, PACCAR moved for the entry of a default judgment against Mr. Freeman. Doc. 15. On May 24, 2017, the court denied without prejudice as premature the motion for a default judgment. Doc. 22.

On November 30, 2017, PACCAR renewed its motion for default judgment against Mr. Freeman. Doc. 26. The court ordered Mr. Freeman to show cause why a default judgment should not be entered. Doc. 35. Mr. Freeman did not respond to the court's order.

On August 8, 2018, the court stayed the entire case pending the bankruptcy court's resolution of defendant Lenn Morris's liability. Doc. 40. The bankruptcy case was discharged in favor of Mr. Morris on May 8, 2019. Doc. 46 at 1.

PACCAR renewed its motion for entry of default against Mr. Freeman on November 26, 2019. Doc. 47. In support of its motion, PACCAR filed the Contracts, Doc. 26-1 at 11-63, and purported to file the Security Agreement Guaranties signed by Mr. Freeman. *See id.* at 65-70. Instead, PACCAR attached the Security Agreement Guaranties signed by Mr. Morris. *Id.* However, the record contains the Security Agreement Guaranties signed by Mr. Freeman. Doc. 1-7. To support its

claim for damages under the Contracts and to present facts regarding the sale of the collateral vehicles, which resulted in the reduced balances sought, PACCAR also provided the declaration of a Senior Collector at PACCAR. Doc. 26-1 at 2-9.

The case was re-assigned to the undersigned on December 3, 2020. Doc. 53.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of the clerk's default, if the defendant is not an unrepresented infant or a legally incompetent person, the plaintiff can apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). Before entering a default judgment, the court may conduct hearings if it needs to "conduct an accounting; . . . determine the amount of damages; . . . establish the truth of any allegation by evidence; or . . . investigate any other matter." *Id*. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"A motion for default judgment is not granted as a matter of right." *Glennon v. Rosenblum*, 325 F. Supp. 3d 1255, 1261 (N.D. Ala. 2018) (quoting *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004) (internal footnote omitted)). A court's entry of a default judgment "is only warranted when

there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1] The Eleventh Circuit has interpreted "a sufficient basis" for the judgment as "being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.")). "In addition to the pleadings, a court may consider evidence presented in the form of an affidavit or declaration. *Glennon*, 325 F. Supp. 3d at 1261 (citing *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011)). A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

Before the court enters a default judgment, the court first must ensure that it has subject matter jurisdiction. *Glennon*, 325 F. Supp. 3d at 1262. In the Complaint,

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981).

PACCAR asserts that the court has original jurisdiction over the action "under 28 U.S.C. § 1332(a) since there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs." Doc. 1 ¶ 4.

In its Complaint, PACCAR asserts that Mr. Morris and Mr. Freeman are liable for contractual damages of at least $1,501,245.75. *Id.* at 6. In its default judgment motions, PACCAR asserts that after the foreclosure of the Tractors and Trailers, Mr. Freeman is liable for contractual damages of $700,684.95. Doc. 26 at 16; Doc. 47 at 3. Based on these factual allegations, the court is satisfied that more than $75,000 is in controversy.

As to the requirement of complete diversity between the parties, PACCAR alleges that it "is a Washington corporation qualified to do business in the state of Alabama, with its principal place of business [in] Washington." Doc. ¶ 1. Mr. Freeman is an "adult citizen of the State of Alabama" *Id.* ¶ 2. And, Mr. Morris is an "adult citizen of the State of Alabama." *Id.* ¶ 3. Accordingly, the parties are completely diverse, and the court therefore has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

### B. Personal Jurisdiction

The court also must determine that it has personal jurisdiction over the defendant. *Glennon*, 325 F. Supp. 3d at 1263 (citing *Oldfield v. Pueblo De Bahia*

*Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009)). Under Rule 4 of the Federal Rules of Civil Procedure, "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

PACCAR alleges that Mr. Freeman "is not an infant or an incompetent person, and is not on active duty in any of the branches of the Uniform Services." Doc. 11 at 1-2. The record indicates that Mr. Freeman was personally served on January 26, 2017, at 100 Edgil Road in Jasper, Alabama. Doc. 8. Therefore, the court is satisfied that it has personal jurisdiction over the in-state defendant Mr. Freeman.

### C. Liability

PACCAR asserts one theory of recovery—breach of the Contracts and the Security Agreement Guaranties. Doc. 1 ¶ 26. "A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992). "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims. . . . Th[is] doctrine states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (cleaned up).

Here, each Contract specifies that it is "entered into in the State of Alabama and is governed by its laws." Doc. 1-1 at 3; Doc. 1-2 at 3; Doc. 1-3 at 3; Doc. 1-4 at 4; Doc. 1-5 at 3; Doc. 1-6 at 3. The Security Agreement Guaranties do not contain additional choice of law terms. *See* Docs. 1-7 and 1-8. Therefore, the court finds that the law of the state of Alabama apply.

A breach-of-guaranty claim is a breach-of-contract claim. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So.3d 484, 490 (Ala. 2020) (cleaned up). Additionally, under Alabama law, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." *Delro Indus., Inc. v. Evans,* 514 So.2d 976, 979 (Ala.1987).

The facts alleged in PACCAR's Complaint are sufficient to allege a breach of the Security Agreement Guaranties against Mr. Freeman under Alabama law. *First*, to establish the existence of a binding contract, PACCAR submitted Security Agreement Guaranties wherein Mr. Freeman promised to pay Forest Energies, LLC's obligations under the Contracts. Doc. 1-7. *Second*, PACCAR "performed under the Contracts by financing the purchase of Tractors and Trailers." Doc. 26 at

9

14-15. Therefore, PACCAR pleaded facts that satisfy the element of performance. *Third*, the unambiguous terms of the Security Agreement Guaranties establish that Mr. Freeman agreed to pay outstanding amounts under the Contracts. In the Security Agreement Guaranties executed by Mr. Freeman, he "guarantee[d] to [PACCAR] . . . that (i) all [Forest Energy, LLC's] indebtedness under the Contract . . . will be paid in full when due." Doc. 1-7 at 2-7. PACCAR pleaded facts that satisfy the element of breach because PACCAR alleges that Mr. Freeman as guarantor has "breached [his] obligations under the Contracts and the Security Agreement Guaranties." *Id.* ¶ 26.

Additionally, PACCAR asserts that, as a result of the default of the Contracts, "PACCAR disposed of the collateral [Tractors and Trailers] in a commercially reasonable manner." Doc. 26 at 15. Although disposing of the Tractors and Trailers resulted in "proceeds . . . from the sales," PACCAR continued to suffer damages in the amount of $700,684.95 after the sales. *Id.* Accordingly, the court finds that PACCAR has adequately pleaded a claim for breach of contract against Mr. Freeman under Alabama law.

### D. Damages

Although a defaulted defendant admits well-pleaded allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default." *Glennon*, 325 F. Supp. 3d at 1268 (quoting *PNCEF, LLC v. Hendricks Bldg. Supply*,

*LLC*, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010)). A district court must "assure that there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). If the record is sufficient, a district court may determine the amount of damages without a hearing. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

PACCAR requests that the court enter a default judgment in its favor against Mr. Freeman in the amount of $700,684.95. Doc. 26 at 16. To support its claim for damages, PACCAR provided the declaration of Steve Selvar, a Senior Collector in the Corporate Portfolio Department for PACCAR, Doc. 26-1 at 2 ¶ 1. The Selvar Declaration recites each Contract's payoff prior to foreclosure sale, proceeds of each foreclosure sale, foreclosure sale expenses, and total deficiencies after foreclosure sales. *Id.* at 3-7 ¶¶ 4-46. Further, the Selvar Declaration "is given on the basis of [Mr. Selvar's] personal knowledge and review of the records of PACCAR pertaining to the indebtedness . . . and kept in the ordinary course of business by the office of PACCAR." *Id.* at 2 ¶ 1.

Federal Rule of Civil Procedure 54 provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). PACCAR's Complaint requests "judgment against Ricky Freeman and Lenn Morris, jointly and severally, in the amount due as of November 18, 2016 of $1,501,245.75, together with accrued and accruing interest, late charges,

expenses of collection, including attorneys' fees and costs, as well as such other, further, or different relief to which PACCAR may be entitled." Doc. 1 at 6. In PACCAR's Renewed Motion for Default Judgment Against Defendant Ricky Freeman, PACCAR requests "judgment against Mr. Freeman in the amount $700,684.95 and other, different relief as this Court deems just and appropriate." Doc. 26 at 16. PACCAR specifically declines to "seek attorneys' fees or costs of collection . . . to avoid the necessity of any evidentiary hearing." *Id.* at 12 n.1. In PACCAR's latest Motion to Renew Motion for Default Judgment Against Defendant Ricky Freeman, PACCAR again requests "judgment against Mr. Freeman in the amount $700,684.95 and such other, different relief as this Court deems just and appropriate." Doc. 47 at 3.

The court awards PACCAR the amount sought in its renewed motions for default judgment against Mr. Freeman. Docs. 26 and 47. The Selvar Declaration attached to PACCAR's Renewed Motion for Default Judgment Against Defendant Ricky Freeman, Doc. 26, indicates that after foreclosing on the Tractors and Trailers, the amount due under the Contracts was $700,684.95. Doc. 26-1 at 3-7 ¶¶ 4-46. The Selvar Declaration provides sufficient detail of the payoff amounts and foreclosure proceeds and expenses.[2] Additionally, it provides that it is based on PACCAR's

---

[2] There appears to be a scrivener's error in PACCAR's Renewed Motion for Default Judgment Against Defendant Ricky Freeman, Doc. 26 at 8 ¶ 33. That paragraph asserts that "[t]he Fourth Contract payoff prior to the foreclosure sales was $500,014.20." *Id.* However, the Selvar Declaration states that "[t]he Fourth Contract payoff prior to the foreclosure sales was

12

records kept in the ordinary course of business. *Id.* at 2 ¶ 1. Accordingly, PACCAR is entitled to damages in this amount.

## IV. CONCLUSION

PACCAR's motion for a default judgment against Mr. Freeman, Docs. 26 and 47, is **GRANTED** and a default judgment is **ENTERED** against Mr. Freeman. Per PACCAR's motions, the court awards PACCAR $700,684.95 in damages. The court will enter a separate final judgment.

**DONE** and **ORDERED** this 1st day of November, 2021.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

---

$505,014.20." Doc. 26-1 at 6 ¶ 35. The court is satisfied that the deficiency calculations are correct when relying on the assertions in the Selvar Declaration.